# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

**TERRANCE LYNN JOHNSON**
    **LA. DOC #462873**

**VS.**

**KEITH DEVILLE**

**CIVIL ACTION NO. 5:16-cv-971**

**SECTION P**

**JUDGE S. MAURICE HICKS**

**MAGISTRATE JUDGE HAYES**

## <u>AMENDED</u> <u>REPORT AND RECOMMENDATION</u>

*Pro se* Petitioner Terrance Lynn Johnson, an inmate in the custody of the Rayburn

Correctional Center in Angie, Louisiana, filed the instant Petition for writ of *habeas corpus*

pursuant to 28 U.S.C. § 2254 on June 30, 2016. [doc. # 1]. Petitioner attacks his October 19,

2010, conviction for possession of a schedule II, controlled dangerous substance, his plea of

guilty to that charge, and his sentence of 40 years imposed thereon by Louisiana's First Judicial

District Court, Caddo Parish. This matter has been referred to the undersigned for review, report,

and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing

orders of the Court.

## <u>Background</u>

The underlying facts in this case have been set forth by the Louisiana Second Circuit

Court of Appeal as follows:

> Defendant was charged with distribution of a Schedule II controlled dangerous
> substance (cocaine) as the result of selling 15 grams of cocaine in February 2010. A
> trial commenced; but, after jury selection was almost completed, Defendant chose to
> plead guilty as charged. There was no agreement as to the sentence and no agreement
> by the state that a multiple offender adjudication would not be sought.

Defendant's attorney withdrew from the case and another attorney was hired, who filed a motion to

withdraw the guilty plea; however, after a hearing, the motion was denied. A writ application was

filed with this court and was granted, but the decision of the trial court was affirmed. See *State v. Johnson*, 46,673 (La.App.2d Cir. 7/11/11) (unpub.). A writ application was filed with the Louisiana Supreme Court, and that application was denied. See *State v. Johnson*, 11-1765 (La. 10/14/11), 74 So.3d 714.

> A habitual offender bill of information was filed and a hearing was held in August 2012. Since Defendant had pled guilty in 2003 to possession of Schedule II controlled dangerous substance (cocaine), he was adjudicated a second felony habitual offender. A presentence investigation (PSI) report was ordered by the trial court.

> A sentencing hearing was held at which the trial judge stated that he had reviewed the PSI as well as the facts of the case and the sentencing recommendations by the district attorney's office. He also stated that he had taken into account the guidelines provided for sentencing in La. C. Cr. P. art. 894.1. The trial judge noted that Defendant actually had two prior felonies- the 2003 possession of cocaine conviction, which had originally been brought as a charge of possession of over 28 and less than 200 grams, and possession of a firearm by a convicted felon. Defendant's probation was revoked in 2004 as a result of the firearm charge, and the firearm charge was removed to federal court.

> The trial judge noted that Defendant had been arrested as a principal to a second degree murder, but that the charge had been dismissed. Defendant had also been arrested for another felony, simple robbery in 1995, but that charge had been dismissed because the victim refused to cooperate. Defendant also had various misdemeanors on his record.

> The trial judge noted that the drug dealt in this case was a controlled dangerous substance and that the offender obtained substantial income from engaging in the activity because more than $11,000 had been found at Defendant's home at the time of his arrest. After reiterating that he considered the factors for sentencing found in La. C. Cr. P. art. 894.1 and considering that the sentencing range for this crime as a second felony offense was 15 to 60 years, the trial judge sentenced Defendant to 40 years at hard labor. The first 2 years were to be served without benefit of probation, parole or suspension of sentence; the other 38 years were to be served without benefit of probation or suspension of sentence.

*State v. Johnson*, 127 So.3d 988, 989-90 (La. Ct. App. 2d Cir. 2013).

On appeal to the Second Circuit Court of Appeal, Petitioner argued that his sentence was excessive. *Id*; doc. #14-5, p. 167. On November 20, 2013, the appellate court affirmed Petitioner's sentence. *Id.* Johnson did not seek further appellate review.

Johnson filed a *pro se* application for post-conviction relief on September 14, 2014,

raising ten ineffective assistance of counsel claims which are identical to claims one through ten asserted in the instant federal petition. [doc. #14-6, pp. 23-43].

On November 20, 2014, the trial court denied Petitioner's first application for post-conviction relief. *Id.* at 57-59. The trial court found that Petitioner "failed to show any facts which would support his allegations of ineffective assistance of counsel." *Id.* at 59. It also denied Johnson's claims as repetitive under La. C. Cr. P. art. 930.4(C) because Petitioner raised the same claims at trial and failed to pursue them on appeal. *Id.*

On December 23, 2014, Petitioner filed a second application for post-conviction relief, styled as a motion to reconsider. *Id.* at 60. He asserted four more claims for relief which are identical to claims eleven through fourteen in the instant federal petition. *Id.* at 60-65.

On February 12, 2015, the district court denied Petitioner's motion to consider, construing it as a successive habeas petition. *Id.* at 68-70.

On March 23, 2015, Petitioner filed a writ application with the Second Circuit Court of Appeal, seeking supervisory writ of the trial court's denial of both of his applications for post-conviction relief. Johnson argued two claims: (1) that the district court abused its discretion in denying Petitioner's application for post conviction relief and motion to reconsider; and (2) that the district court failed to appoint counsel and hold a hearing prior to the issuance of its judgment despite Petitioner asserting meritorious ineffective assistance of counsel claims. *Id.* at 75.

On May 28, 2015, the Circuit Court denied Johnson's writ application "on the showing made," citing to *Strickland v. Washington*, 466 U.S. 668 (1984) and Louisiana Code of Criminal Procedure articles 930.2 and 930.4. *Id.* at 147.

On June 16, 2015, Johnson filed a writ application with the Louisiana Supreme Court. *Id.*

at 155. He presented two issues before the Supreme Court: (1) that he was "deprived of his due process right to a hearing with counsel" under the federal and state constitutions where Petitioner raised several meritorious ineffective assistance of counsel claims; and (2) that he was deprived of appointment of counsel under *Martinez/Trevino* despite raising meritorious ineffective assistance of counsel claims. *Id.* at 158. Under issue number one, he listed eleven ineffective assistance of counsel claims, only some of which were argued before the state trial and appellate court. *Id.* at 160-61.

On May 13, 2016, the Louisiana Supreme Court denied Johnson's writ, finding that he failed to show he was denied effective assistance of counsel during plea negotiations under *Strickland.* The Supreme Court also attached and made part of its opinion the state trial court's written reasons denying Johnson's first habeas petition. *Id.* at 250.

On June 30, 2016, Johnson filed the instant petition asserting fifteen claims for relief: (1) counsel failed to investigate, failed to advise Johnson of the "mere presence defense," and induced Johnson's guilty plea based on insufficient evidence; (2) counsel abandoned Johnson and left him without counsel for preliminary examination; (3) counsel failed to secure a copy of the state's DVD used to revoke Johnson's federal probation and failed to file a motion to dismiss the bill of information; (4) counsel failed to prepare for trial and to obtain discovery material; (5) counsel failed to attend pretrial motions hearings, interview any witnesses, research applicable law, obtain discovery material, consult with or advise Johnson of his available options, and prepare for trial; (6) counsel was burdened with a conflict of interest for failing to subject the State's case to adversarial testing; (7) counsel coerced and pressured Johnson into pleading guilty; (8) counsel demoralized Johnson in order to induce him into pleading guilty; (9) counsel

was burdened with a conflict of interest after Johnson requested counsel to file a motion to withdraw guilty plea based on counsel's pressure to plead guilty; (10) counsel induced a guilty plea by promising Johnson he would get a 5-year sentence; (11) the state knowingly suppressed the identity of the confidential informant who purchased cocaine from Johnson, which resulted in an involuntary guilty plea; (12) the state knowingly used perjured evidence through various law enforcement officers in seeking arrest and search warrants; (13) the state failed to prove the constitutionality of the predicate offense used to enhance Johnson's sentence; (14) counsel was ineffective for failing to adequately investigate the circumstances of Johnson's arrest and for failing to seek a *Crosby* plea, resulting in the unconstitutional forfeiture of Johnson's appellate rights; and (15) he was denied his constitutional right to counsel during post-conviction proceedings without due process.

The matter is now before the Court.

## I.    Timeliness

The State argues that Johnson's habeas petition is untimely. Habeas petitions are governed by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, which includes a one-year statute of limitations for filing such writs. A prisoner in custody pursuant to a judgment of a state court has a one-year period within which to file an application for a writ of habeas corpus. *Id.* § 2244(d)(1)(A). The limitation period runs from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. *Id.*

As provided by section 2244(d)(2), the time during which a properly filed application for state post-conviction or other collateral review is pending shall not be counted toward the one-

year period. A "properly filed application" is one submitted according to the state's procedural requirements, such as the rules governing place and time of filing. *Wessinger v. Cain*, 358 F. Supp. 2d 523, 526 (M.D. La. 2005). A state application is pending during the intervals between the state court's disposition of a state habeas corpus petition and petitioner's timely filing of a petition of review at the next level. *Id.* (citing *Melancon v. Kaylo*, 359 F.3d 401, 406 (5th Cir. 2001)).

On July 1, 2013, Johnson, represented by the Louisiana Appellate Project, appealed his sentence. doc. #14-5, pp. 167-171. On November 20, 2013, the appellate court affirmed. *Id.* Johnson did not seek further appellate review. Thus, his conviction became final on December 20, 2013—when the 30-day period during which Johnson could seek review before the Louisiana Supreme Court expired.

Johnson filed his first *pro se* application for post-conviction relief on September 14, 2014, raising ten ineffective assistance of counsel claims. 268 days passed between the finality of his conviction and the filing of his first application for post-conviction relief.

On November 20, 2014,[1] the trial court denied Petitioner's claims. On December 23, 2014, Petitioner filed a second application for post-conviction relief, styled as a motion to reconsider, asserting four more claims for relief. On February 12, 2015, the trial court denied Petitioner's second application, in part, as successive.

On March 23, 2015, Petitioner filed a writ application with the Second Circuit Court of Appeal, seeking review of *both* lower court decisions denying his two post-conviction

---

[1] The trial court's order is signed November 14, 2014, but it was not docketed until November 20, 2014.

application. The State asserts that Johnson had 30 days from the trial court's November 20, 2014 decision to seek supervisory writs with the Circuit Court. [doc. #14-1, p. 11]. Since Johnson did not file a writ application seeking review of both lower court decisions until March 23, 2015 (more than 30 days after his first application was denied), the State argues that his time for filing a federal habeas petition was not tolled between the 30-day cut off after the November 20 judgment (December 20, 2014) and March 23, 2015. This would result in another 93 days passing.

On May 28, 2015, the appellate court denied Johnson's writ. Johnson then timely filed an application for supervisory review with the Louisiana Supreme Court, which was denied on May 13, 2016. Johnson filed the instant federal habeas petition on June 29, 2016, resulting in another 47 days passing. Therefore, the State argues that a total of 408 days have passed, making the instant petition untimely.

The Court disagrees, and finds that Johnson's petition is timely. In *Melancon v. Kaylo*, 259 F.3d 401 (5th Cir. 2001), the Fifth Circuit held that a Louisiana prisoner's untimely application for supervisory writ was "properly filed" for AEDPA purposes because Louisiana rules of appellate procedure entitled the Court of Appeal to consider untimely writ applications on the merits, and the appellate court *did* consider Melancon's application on the merits. *Id.* at 405. However, the Court held that an application for post-conviction relief ceases to be "pending" within the meaning of § 2244(d)(2) when a petitioner fails to timely file an application for a supervisory writ. *Id.* at 407. In other words, cases are no longer "pending" when further appellate review is unavailable, but "a subsequent properly filed application entitles the petitioner to additional tolling beginning at the time of the 'proper' filing." *Id.*

In *Villegas v. Johnson*, 184 F.3d 467 (5th Cir. 1999), a petitioner filed a second state habeas petition, approximately nine months after his first petition was denied, which was dismissed as successive under Texas law. *Villegas v. Johnson*, 184 F.3d 467, 467 (5th Cir. 1999). The Fifth Circuit found that Villegas's successive petition was "properly filed" for purposes of AEDPA because it was filed in accordance with Texas's procedural filing requirements. *Id.* at 469. The Court also stated, "if a state allows petitioners to file second or subsequent petitions [like Texas does] for post-conviction relief, federal courts should not undermine the state's decision by refusing to toll the one-year period of limitation of § 2244(d)(1) where a second or subsequent petition is pending in the state court system." *Id.* at 471.

Here, Johnson's second habeas petition comported with the procedural requirements of Louisiana law. Barring an exception, Louisiana requires applications for post-conviction relief to be filed within two years after the judgment of conviction and sentence has become final. LA. C. CR. P. art. 930.8. Petitioner's conviction and sentence became final on December 20, 2013. *State v. Johnson*, 127 So.3d 988 (La. Ct. App. 2d Cir. 2013). Thus, Johnson's second habeas petition, which was filed on December 23, 2014, was timely. Furthermore, like Texas law, Louisiana's post-conviction procedures envision the filing of second or successive petitions under narrow circumstances. LA. C. CR. P. art. 930.4.

Im sum, AEDPA "authorizes tolling during the pendency of petitions filed in accordance with a state's procedural ruling requirements." *Villegas*, 184 F.3d at 473. Johnson's second state habeas petition, although dismissed as successive, was properly filed. With the benefit of the

resulting toll, Johnson filed his federal habeas petition within the limitations period.[2]

## II.    Exhaustion

The State argues that Johnson did not fairly present his federal claims to the Louisiana Supreme Court, and are therefore unexhausted. Section 2254 provides that a habeas petition shall not be granted unless it appears, subject to certain exceptions, that "the applicant has exhausted the remedies available in the courts of the State". 28 U.S.C. § 2254(b)(1)(A). The Fifth Circuit explained exhaustion as follows:

> The exhaustion requirement is satisfied when the substance of the federal claim is fairly presented to the highest state court on direct appeal or in state post-conviction proceedings, even if the state court fails to address the federal claim, or, if the federal claim is not fairly presented but the state court addresses it *sua sponte*. A claim is fairly presented when the petitioner asserts the claim in terms so particular as to call to mind a specific right protected by the Constitution or alleges a pattern of facts that is well within the mainstream of constitutional litigation. It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made. Rather, the petitioner must afford the state court a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.

*Johnson v. Cain*, 712 F.3d 227, 231 (5th Cir. 2013) (internal quotations marks and citations omitted). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state

---

[2] As described above, 268 days passed between the finality of his conviction and the filing of his first application for post-conviction relief. Johnson filed the instant federal habeas petition on June 29, 2016, 47 days after the Louisiana Supreme Court denied writs. Johnson's first application for post-conviction relief ceased to be "pending" on December 20, 2014 (when the 30-day window for seeking supervisory review to the appellate court expired). But Johnson filed his second habeas petition on December 23, 2014, resulting in the passage of only three days. Thus, only 318 days of the one-year period have expired.

court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A petitioner does not "fairly present" a federal claim when a state supreme court can discover that claim only by reading lower court documents in the case. *See Baldwin*, 541 U.S. at 31. Stated another way, "[a] state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id.* at 32. Nonetheless, the exhaustion requirement is satisfied if a federal claim is not fairly presented but the state court addresses it *sua sponte*. *Johnson*, 712 F.3d at 231; *Jones v. Dretke*, 375 F.3d 352, 355 (5th Cir. 2004).

In his first application for post-conviction relief, Johnson asserted ten ineffective assistance of counsel claims: (1) counsel failed to investigate, failed to advise Johnson of the "mere presence defense," and induced Johnson's guilty plea based on insufficient evidence; (2) counsel abandoned Johnson and left Johnson without counsel for preliminary examination; (3) counsel failed to subject the State's case to adversarial testing, to secure a copy of the state's DVD used to revoke Johnson's probation, and to file a motion to dismiss the bill of information; (4) counsel failed to prepare for trial and to obtain discovery material; (5) counsel failed to attend pretrial motions hearings, interview witnesses, research applicable law, obtain discovery material, consult with or advise Johnson of his available options, and prepare for trial; (6) counsel was burdened with a conflict of interest as a result of his failure to subject the State's case to adversarial testing; (7) counsel coerced and pressured Johnson into pleading guilty; (8) counsel demoralized Johnson in order to induce him into pleading guilty to avoid counsel's

unpreparedness for trial; (9) counsel was burdened with a conflict of interest after Johnson

requested counsel to file a motion to withdraw guilty plea based on counsel's pressure to plead

guilty; and (10) counsel induced a guilty plea by promising Johnson he would get a 5-year

sentence.

In his second application for post-conviction relief, Johnson asserted four claims: (1) the

state knowingly suppressed the identity of the confidential informant who purchased cocaine

from Johnson, which resulted in an involuntary guilty plea; (2) the state knowingly used perjured

evidence through various law enforcement officers in seeking arrest and search warrants; (3) the

state failed to prove the constitutionality of the predicate offense used to enhance Johnson's

sentence; and (4) counsel was ineffective for failing to adequately investigate the circumstances

of Johnson's arrest, and for not seeking a *Crosby* plea, resulting in the unconstitutional forfeiture

of Johnson's appellate rights.

In his writ application with the Louisiana Supreme Court, Johnson presented two specific

issues: (1) that he was denied his due process right to a hearing with counsel where he raised

several ineffective assistance of counsel claims; and (2) that he was deprived of appointment of

counsel under *Martinez/Trevino* despite raising ineffective assistance of counsel claims. Under

issue one, Johnson argued that his trial counsel was ineffective. *Id.* Specifically, he asserted,

> Petitioner Johnson avers the following post conviction claims if established through
> an evidentiary hearing with counsel as indigent will entitle petitioner to vacation [sic]
> of his guilty plea and sentence as involuntary due to ill-advice of counsel who refused
> to investigate and advise petitioner of any and all plausible defenses that were clearly
> available unless the State of Louisiana can establish that petitioner Johnson
> intentionally relinquished or abandoned a known right or privilege . . . .

[doc. #14-6, p. 160]. He then listed, in a bullet-point fashion, eleven claims:

1. Counsel Thomas's inducement that the mere fact that petitioner visited residence under surveillance for drug activity that he was guilty of distribution of 15 grams CDS (cocaine) as said fact is insufficient evidence to sustain a conviction and incorrect legal advice.

2. Counsel's failure to advise petitioner of the mere presence defense deprived petitioner of his affirmative defense, due process of law, and effective counsel.

3. There was no evidence in the record that petitioner engaged in any type of distribution of the 15 grams CDS (cocaine)

4. Petitioner requested counsel Thomas to file a Motion to Withdraw the guilty plea prior to sentencing and he lied and told me it was to late.

5. Counsel failed to move to dismiss the bill of information due to suppression of Brady material.

6. Counsel Thomas was burdened with an actual conflict of interest once I filed a Motion to Withdraw the guilty plea based upon ineffective counsel yet refused to withdraw resulting in the ill-advised guilty plea.

7. Counsel failed to do any meaningful testing of the State's case under Strickland/Cronic.

8. The State knowingly suppressed the identity of the alleged CI who purchased cocaine from petitioner for confrontation and cross-examination purposes of the Motion to Suppress Evidence, Preliminary Hearing and Trial purposes.

9. The State knowingly suppressed the identity of the CI and knowingly used perjured testimony through various law enforcement officers under oath in seeking the arrest and search warrant stating the CI purchased cocaine from petitioner Johnson.

10. The State failed to prove the constitutionality of the prior predicate used to enhance my sentence under LSA-R.S. 15:529.1 since:
   - a. The State failed to introduce any evidence to prove beyond a reasonable doubt that *State v. Johnson*, #217,866 1st Judicial District Court, Parish of Caddo, was entered voluntarily, knowingly and intelligently with counsel.

11. Counsel was ineffective for failing to adequately investigate the circumstance of petitioner's arrest and perfect and preserve the aforesaid claims under Crosby resulting in unconstitutional forfeiture/procedural default on direct appeal without notice and a waiver.

*Id.* at 160-61.

The undersigned concludes that Johnson has exhausted all of his federal claims, except part of claim fifteen. In its ruling denying Johnson's writ, the Louisiana Supreme Court held that Johnson failed to show he was denied the effective assistance of counsel during plea negotiations under *Strickland.* [doc. #14-6, p. 250]. Significantly, the Louisiana Supreme Court attached to, and made part of, its opinion the District Court's written reasons denying Johnson's first habeas application. Therefore, the Louisiana Supreme Court appears to have *sua sponte* considered all ten of Johnson's ineffective assistance of counsel claims that he asserted in his first habeas petition, which are identical to the first ten claims in the instant federal petition. *See Dretke*, 375 F.3d at 355 (although petitioner did not adequately present his federal claim, state remedies related to this claim were nonetheless exhausted because the Texas Court of Criminal Appeals "undertook to decide it on the merits."). As for the four claims in Johnson's second habeas petition, which are identical to claims eleven through fourteen in the instant federal petition, Johnson specifically presented those to the Louisiana Supreme Court in bullet point fashion. Therefore, the first fourteen of Johnson's federal claims are exhausted.[3]

---

[3] The State also argues that Johnson's claims are procedurally defaulted. In denying Johnson's applications for post-conviction relief, the trial and appellate courts cited to *Strickland v. Washington*, 466 U.S. 668 (1984), and Louisiana Code of Criminal Procedure article 930.4 as bases for dismissal. Article 930.4 operates as an independent and adequate state law ground that acts as a procedural bar to habeas claims. *Washington v. Cain*, No. 98-0584, 2000 WL 863980, *4 (E.D. La. June 27, 2000). However, the Louisiana Supreme Court only cited to *Strickland v. Washington*, 466 U.S. 668 (1984), as a basis for denying Johnson's habeas claims, and found that Johnson failed to show he was denied effective assistance of counsel. Accordingly, because the Louisiana Supreme Court's decision fairly appears to rest on federal law, Johnson's claims are not procedurally defaulted. *See Coleman v. Thompson*, 111 S.Ct. 2546, 2557 (1991) ("In habeas, if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims,

Claim fifteen, however, is not exhausted. In addition to concluding that Johnson's second habeas petition was without merit, the state trial and appellate courts found that his second habeas petition was procedurally barred under Louisiana Code of Criminal Procedure article 930.4. Article 930.4(E) provides that a successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior habeas application. LA. C. CR. P. art. 930.4(E). In response to those rulings, before the Louisiana Supreme Court, Johnson argued that the rule announced in *Martinez/Trevino* (that a prisoner may establish cause for a default of an ineffective assistance claim) should be applied in Louisiana. He further argued that he was "entitled to an evidentiary hearing with conflict free counsel to establish his substantial ineffective assistance of counsel claims at the trial and appellate level". [doc. #14-6, pp. 163-64]. In the instant petition, Johnson again argues that the rule announced in *Martinez/Trevino* should apply in Louisiana, but he also argues that his appellate counsel was ineffective for failing to argue on appeal that his guilty plea was involuntary due to trial counsel's ineffectiveness.

Claim fifteen is therefore, at least partially, unexhausted. Typically, "federal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." *Neville v. Dretke*, 423 F.3d 474, 482 (5th Cir. 2005). "However, consistent with its goal of providing for the speedy resolution of federal petitions, AEDPA provides that applications may be denied on the merits, 'notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.'" *Id.* (citing 28 U.S.C. § 2254(b)(2). Therefore, it is within the district court's discretion to deny claim fifteen on the

---

and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition.").

merits, even though the claim was improperly presented to the federal district court as part of a mixed petition. Instead of dismissing Johnson's petition as "mixed," the court will recommend denial of claim fifteen on the merits *infra*.

## III.    Standard of Review – 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief. The AEDPA limits how a federal court may consider *habeas* claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . .

[the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). AEDPA has put into place a deferential standard of review, and a federal court must defer to a state court adjudication on the merits. *Valdez v. Cockrell*, 274 F.3d 941, 950 (5th Cir. 2001). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

## IV. Petitioner's Guilty Plea

After trial commenced, but before jury selection was complete, Johnson pleaded guilty to one count of Distribution of Schedule II Cocaine, with no agreement as to the sentence. [doc. #14-3, p. 398]. It is well-established that criminal defendants have only a limited ability to challenge a conviction entered pursuant to a guilty plea. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *McMann v. Richardson*, 397 U.S. 759, 770 (1970). "[W]hen a defendant enters a voluntary and unconditional guilty plea, the plea has the effect of waiving all nonjurisdictional defects in the prior proceedings." *U.S. v. Daughenbaugh*, 549 F.3d 1010, 1012 (5th Cir. 2008) (citing *U.S. v. Stevens*, 487 F.3d 232, 238 (5th Cir. 2007)).

A ruling on a pretrial motion, even if erroneous, is a nonjurisdictional defect that is waived by an unconditional guilty plea. *U.S. v. Coil*, 442 F.3d 912, 914 (5th Cir. 2006). Ineffective assistance of counsel claims are also waived, unless such assistance "directly affected" the validity of the waiver of constitutional rights or the plea itself. *U.S. v. White*, 307 F.3d 336, 343 (5th Cir. 2002). When an accused enters a guilty plea, he waives his right to testify on his own behalf, the right to a jury trial and the right to confrontation. *Fisher v. Wainwright*, 584 F.2d 691, 692 (5th Cir. 1978).

A federal court will uphold a guilty plea challenged in a habeas proceeding provided the plea is shown to have been knowing, voluntary, and intelligent. *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995). A guilty plea is considered knowing and voluntary and intelligent so long as a defendant has been advised and indicates that he knows and is aware of "the maximum prison term and fine for the offense charged." *Ables v. Scott*, 73 F.3d 591, 592 n. 2 (5th Cir.1996) (citing *U.S. v. Rivera*, 898 F.2d 442, 447 (5th Cir.1990)). Thus, if the habeas petitioner "understood the length of time he might possibly receive, he was fully aware of his plea's consequences." *Barbee v. Ruth*, 678 F.2d 634, 635 (5th Cir.1982). Put another way, a guilty plea is considered "voluntary" if it is made by a defendant who is "'fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel'" and who has not been "induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes)." *Brady v. U.S.*, 397 U.S. 742, 755 (1970) (quoting *Shelton v. U.S.*, 246 F.2d 571, 572 n. 2 (5th Cir.1957)).

When analyzing a collateral attack on a guilty plea entered pursuant to a plea bargain, "the representations of the defendant, his lawyer, and the prosecutor at [the original plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Moreover, prior attestations of voluntariness are not an absolute bar to relief, although they impose on the Petitioner a heavy burden. *U.S. v. Diaz*, 733 F.2d 371, 373-74 (5th Cir. 1984). A habeas petitioner must show that his plea was "so much the product of . . . misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment." *Blackledge*, 431 U.S. at 75.

Based on the thorough transcript of Johnson's plea colloquy, the Court finds that Johnson's guilty plea was voluntary, knowing, and intelligent, and that he understood that he was waiving his constitutional rights to a jury trial and confrontation. The trial court recited the terms of the plea agreement, in pertinent part, as follows:

| | |
|---|---|
| THE COURT: | Mr. Johnson, it's my understanding you're going to plead guilty to Distribution of Schedule II Cocaine; is that correct, sir? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Do you understand that by pleading guilty, you're giving up the right to a trial by jury? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Do you understand that by pleading guilty, you're giving up the right to confront the witnesses against you as well as to cross-examine those witnesses? |
| THE DEFENDANT: | Yes, sir. |

| | |
|---|---|
| THE COURT: | Do you understand that by pleading guilty, you're giving up the right against compulsory self-incrimination? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Do you understand all these rights you're giving up? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Do you have any questions about these rights you're giving up, sir? |
| THE DEFENDANT: | No, sir. I just would like to get out of the drug program. |
| THE COURT: | No problem. I'm just talking about the right to remain silent -- |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | – the right to confront witnesses, and the right to a jury trial. Do you understand these are the rights you're waiving by pleading guilty? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Do you understand that by pleading guilty to Distribution of Schedule II Cocaine, this Court can sentence you at a minimum of two years hard labor, said two years being without benefit of probation, parole, or suspension of sentence, and up to 30 years of hard labor? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | As well as impose a fine of up to $50,000? |
| THE DEFENDANT: | Yes, sir. |

[doc. #14-3, pp. 399-400]. The court then explained to Johnson that he would be subject to sentencing as a multi-offender and that there was no agreement as to sentencing:

| | |
|---|---|
| THE COURT: | It's my understanding you're multi-billed, sir, is that correct? |
| THE DEFENDANT: | I mean, I don't understand multi-bill. I just got two felonies, so I |

|   |   |
|---|---|
| | don't - - |
| THE COURT: | Okay. Well, it's under 15:529.1, sir. |
| THE DEFENDANT: | Okay. |
| THE COURT: | And the State is the one that brings the multi-bill. |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | They're the only ones that have any say so about that, the District Attorney's Office. I can't stop the multi-bill nor can you, okay? They have that power to either bring the multi-bill, or charge you as a habitual offender, or not. Do you understand that, sir? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Today, there is no agreement by the State as to what they're going to do. Do you understand that? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | You're pleading straight up. Do you understand that? With no agreement. Do you understand that? |
| THE DEFENDANT: | Yes, sir. |

*Id.* at 400-401. The court then examined Petitioner to determine if his plea was voluntary:

|   |   |
|---|---|
| THE COURT: | Okay. Is anybody forcing you or making you plead guilty today? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | Do you want to plead guilty? |
| THE DEFENDANT: | Yes, sir. |

*Id.* at 401. After the prosecutor recited the facts underlying Johnson's charge, the court asked:

|   |   |
|---|---|
| THE COURT: | Are those facts correct, sir? |
| THE DEFENDANT: | Yes, sir. |

THE COURT: You did, in fact, distribute cocaine on that date?

THE DEFENDANT: Yes, sir.

*Id.* at 402.

THE COURT: You've had a chance to discuss with your attorney the nature of the charges against you as well as what can happen to you?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any questions for your attorney?

THE DEFENDANT: No, sir.

THE COURT: You understand you do not have the right to appeal this decision?

THE DEFENDANT: Yes, sir.

THE COURT: You're pleading guilty today because you are, in fact, guilty. Is that correct?

THE DEFENDANT: Yes, sir.

*Id.* at 402. The court again ascertained whether Petitioner understood his possible sentence:

THE COURT: You understand the multi-bill is enhanced penalties?

THE DEFENDANT: I mean, like, does it give me, like, a figure?

THE COURT: Well, depending on what type of prior felonies. If you've got two prior felonies, okay –

THE DEFENDANT: Yes, sir.

THE COURT: – it depends what they are. If you've got one prior felony, it would be a minimum of 15 to 60, okay?

THE DEFENDANT: Yes, sir.

THE COURT: Two prior felonies, it could be 20 to 60, okay?

THE DEFENDANT: Yes, sir.

*Id.* at 402-03.

THE COURT:   Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT:   Depending on what type of felonies, okay? Whether or not they're of a violent nature, whether or not they're of possession or dealing with CDS over ten years, or a regular felony if you want to call it that, punishable by 12 years or more, okay? It all depends on the type. All right?

THE DEFENDANT: Yes, sir.

THE COURT:   And depending on the type, that determines the sentence range under the Habitual Offender Bill. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT:   Do you understand there is no agreement regarding that?

THE DEFENDANT: Yes, sir.

THE COURT:   Sir, do you understand that?

THE DEFENDANT: Yeah.

*Id.* at 404. The trial court judge then concluded that Johnson "freely and voluntarily pled guilty without anyone having forced, coerced or made him do so." *Id.* at 406. One last time, the court asked Johnson, "You freely and voluntarily pled guilty?" to which Johnson responded, "Yes, sir." *Id.* at 406-07.

By his own admission, under oath, Johnson stated that he understood that he was waiving his constitutional rights to a jury trial and confrontation, and that he understood the possible sentence that could be imposed. It is evident that the trial court conducted a very thorough *Boykin*

examination to ensure that Petitioner was making a voluntary and intelligent guilty plea, and that Petitioner understood he was waiving his constitutional rights. Based on the record, the undersigned also finds that Petitioner's plea was voluntary and intelligent, and that he understood the rights he was waiving.

Johnson attempts to overcome his sworn statements to the trial court based on testimony at the hearing on his motion to withdraw his guilty plea. Shortly after Johnson pleaded guilty, his trial counsel, Loyd Thomas, withdrew from the case. [doc. #14-3, p. 100]. On January 21, 2011, Johnson's new attorney, J. Ransdell Keene, enrolled. *Id.* at 156. On January 25, 2011, Mr. Keene filed the motion to withdraw Johnson's guilty plea, arguing that Mr. Thomas provided ineffective assistance. An evidentiary hearing was held on February 24, 2011, before the state trial court, at which Johnson and Mr. Thomas testified. Mr. Thomas testified that he was unprepared for trial, that he was suffering from stress-related problems at the time, and that he took a break from the practice of law in August and September of 2010 when he was representing Johnson. Johnson also testified  that he wanted to withdraw his plea because Thomas promised him a five year sentence and no multi-offender bill.

The trial court denied Johnson's motion, finding that Mr. Thomas provided effective assistance and that Johnson's guilty plea was voluntary, intelligent, and knowing. The trial court noted that Mr. Thomas filed pretrial motions, such as a motion for bond reduction, motion to suppress, and motion in limine by which he successfully excluded other crimes evidence from trial. [doc. #14-4, p. 258, 260-61]. It further noted that Mr. Thomas did "an excellent job in voir dire," that he met with his client to discuss the case at least six times, and that Mr. Thomas met with the district attorney numerous times before trial to discuss possible pleas. *Id.* at 261, 263,

265. Mr. Thomas testified that he was unprepared for trial because he failed to obtain both a video of Johnson's statement to police and the affidavit in support of the search warrant. However, the trial court found those assertions to be contradicted by Mr. Thomas's own testimony. Mr. Thomas testified that the crux of Johnson's statement was reflected in the police reports that Mr. Thomas already obtained, and the affidavit was related to a separate incident for which Johnson was not on trial. *Id.* at 264, 266. Moreover, Mr. Thomas testified that he discussed Johnson's statement to the police with him before trial. *Id.* at 318. Testimony was also elicited that Mr. Thomas grew up next door to the defendant's family, suggesting that Mr. Thomas was attempting to get Johnson a new deal in order to assuage his own guilt. *Id.* at 328. Mr. Thomas had 20 years of experience practicing law, had done hundreds of criminal cases, and admitted that he would have been able to cross-examine the State's witnesses at trial. *Id.* at 266.

The trial court also found Johnson's testimony at the hearing to be "extremely uncredible," self-serving, and dishonest. *Id.* at 267. The court "doubt[ed] seriously" that the district attorney involved would ever offer five years to Johnson based on his criminal history. *Id.* The trial court also believed that Johnson tailored his testimony to *State v. Calhoun*, 694 So.2d 909 (La. 1997), where a defendant was permitted to withdraw his Alford plea due to counsel's ineffectiveness. The court noted many difference between Johnson's case and *Calhoun*, namely that Johnson did not enter an Alford plea, that Mr. Thomas was in fact prepared, and that Mr. Thomas testified that he neither forced Johnson to plead guilty, nor told him it was in his best interest to plead guilty. [doc. #14,4, p. 178]. Mr. Thomas testified that he did not promise Johnson anything in return for a guilty plea, or threaten Johnson in any way. *Id.* at 182. He further testified that Johnson chose to plead guilty during the voir dire process after Mr. Thomas

informed Johnson about what the district attorney said about Johnson's case. *Id.* at 178.

Given the credibility determination made by the trial court, Johnson has not overcome his own sworn statements or the record itself. The record reflects that he was not coerced into pleading guilty, that he understood the charges and possible sentences that could be imposed, and that he understood the consequences of his guilty plea. His guilty plea was therefore voluntary.

## V.     Petitioner's Claims

In the instant petition, Johnson asserts fifteen claims for relief. Claims one through ten, and claims fourteen and fifteen, are ineffective assistance of counsel claims. Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the petitioner of his constitutional right to a fair trial or deprives the petitioner of some other constitutional right. *Strickland v. Washington.*, 466 U.S. 668, 686-87 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and that the ineffectiveness of counsel prejudiced him. *Id.*

If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The prongs of the test also need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997). Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of

trial strategy. *See Strickland*, 466 U.S. at 689-90. The petitioner must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Id.* at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

The second prong, in the context of guilty pleas, "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

On state post-conviction relief, the state courts rejected Johnson's arguments that his trial counsel was ineffective. The trial court held that Mr. Thomas "act[ed] in the best interest of Petitioner," in that he "filed several pre-trial motions including a motion to suppress, as well as a motion in limine" which were both granted in part. [doc. #14-6, p. 58-59]. The trial court held that Petitioner "failed to show any facts which would support his allegations of ineffective assistance of counsel," and concluded that Johnson was attacking "his trial counsel because the case did not turnout the way he wanted." *Id.* at 59. It further held that Johnson failed to show he suffered any prejudice. *Id.*

On May 28, 2015, the Circuit Court denied Johnson's petition "on the showing made," citing to *Strickland*. [doc. #14-6, p. 147]. The Louisiana Supreme Court denied writ, finding that Petitioner failed to show he was denied effective assistance of counsel during plea negotiations under *Strickland*. *Id.* at 250.

> *1. Failure to Investigate and for Involuntarily Inducing Petitioner's Guilty Plea Where There was Insufficient Evidence to Convict*

Petitioner argues that counsel was ineffective for failing to investigate and for inducing a guilty plea based on insufficient evidence of Johnson's guilt. [doc. #1, p. 21]. Johnson asserts that counsel "ignored the fact that there was and is insufficient evidence to sustain a conviction against Applicant for distribution of 15 grams of a controlled dangerous substance." *Id.* at 22. Johnson further argues that counsel's failure to advise him of the "mere presence" defense deprived him of effective assistance and due process. *Id.* at 23.

Once Johnson entered his guilty plea, he waived his right to challenge the sufficiency of the State's evidence against him. *Kelly v. Alabama*, 636 F.2d 1082, 1085 (5th Cir. 1981)*; Babb v. Johnson*, 61 F.Supp.2d 604, 606-07 (S.D. Tex. 1999) (guilty plea waived alleged insufficiency of evidence claim). Moreover, counsel's alleged failure to advise Johnson about the "mere presence defense," and his alleged failure to investigate, constitute nonjurisdictional defects that were waived by Johnson's guilty plea. *Lloyd v. Director, TDCJ-CID*, No. 5:09-CV-161, 2012 WL 5830717, *5 (E.D. Tex. Oct. 3, 2012) (guilty plea waived ineffective assistance of counsel claim for failure to thoroughly investigate).

Furthermore, to the extent Johnson argues that counsel's advice rendered his plea involuntary, that claim is meritless. This court has already found that Johnson's guilty plea was entered voluntarily, knowingly, and intelligently. There is simply no basis in the record to support Johnson's allegation that he was induced into pleading guilty by trial counsel. Based on the evidence and testimony elicited at the hearing on the motion to withdraw guilty plea, the undersigned cannot conclude that the state court's ruling was contrary to, or an unreasonable application of, clearly established federal law. Claim one should be **DENIED**.

    2. *Counsel Abandoned Petitioner, Leaving Him Without Counsel for Preliminary*

*Examination*

Petitioner contends that his lawyer failed to appear for a preliminary examination leaving Johnson without counsel during a critical stage of the proceedings. [doc. #1, p. 24]. The Sixth Amendment right to counsel applies to "critical" stages of the proceedings. *U.S. v. Wade*, 87 S.Ct. 1926, 1931 (1967). Even assuming that the preliminary examination is a critical stage in Louisiana proceedings, the undersigned finds that Johnson was neither denied a preliminary examination without counsel, nor was he prejudiced whatsoever by counsel's actions.

Johnson's preliminary examination was set for August 2, 2010. Mr. Thomas did not appear in court on August 2, so the preliminary examination was not conducted. The day before trial, Mr. Thomas informed the court that "Mr. Johnson . . . is complaining that he didn't have a preliminary examination, and he is requesting a preliminary examination." [doc. #14-4, p. 313]. The trial court stated that it would "take care of it" the following morning. *Id.* However, Johnson pleaded guilty the next day instead. Even assuming counsel's conduct was deficient for failing to appear on August 2nd, no prejudice resulted to Johnson, as the trial court was willing to conduct a preliminary examination before trial. Moreover, because Johnson entered a valid guilty plea, he waived all nonjurisdictional defects in the prior proceedings, including his alleged right to a preliminary examination with counsel present. *See Askew v. State of Ala.*, 398 F.2d 825, 825 (5th Cir. 1968). Claim two should be **DENIED.**

*3. Failing to Procure a Copy of the State's DVD Evidence and Filing a Motion to Suppress*

Johnson asserts that trial counsel failed to obtain a DVD copy of Johnson's statements to the police that the government relied on as evidence to revoke Johnson's federal probation. [doc.

#1, p. 25]. He argues that the government had a duty to turn over the DVD under *Brady v. Maryland*, 373 U.S. 83 (1963), and that counsel failed to move to dismiss the case as a result of the prosecution's failure to disclose same. *Id.*

In *Brady v. Maryland*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the results of the proceeding would have been different." *U.S. v. Bagley*, 473 U.S. 667, 682 (1985).

Assuming *arguendo* that the DVD is *Brady* material, the Fifth Circuit has already foreclosed federal habeas relief on this ground. *U.S. v. Santa Cruz*, 297 F. App'x. 300, 301 (5th Cir. 2008) (Petitioner's argument that his guilty plea was not knowing and voluntary because of Government's alleged *Brady* violations, which occurred before his guilty plea was entered, was either waived or foreclosed); *Matthew v. Johnson*, 201 F.3d 353, 362 (5th Cir. 2000) (holding that "the failure of a prosecutor to disclose exculpatory information to an individual waiving his right to trial is not a constitutional violation."); *see U.S. v. Ruiz*, 536 U.S. 622, 629 (2002) (holding that the Constitution does not require the pre-guilty plea disclosure of impeachment information). Additionally, Johnson's argument that counsel should have moved to dismiss the case based on the DVD evidence constitutes a nonjurisdictional defect that Johnson waived when he pleaded guilty. *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983). Claim three should be **DENIED**.

*4. Failing to Prepare for Trial and Obtaining Relevant Discovery Material*

Petitioner contends that counsel did not subject the prosecution's case to adversarial testing, in that counsel "refused to supply the district attorney's office with a [blank] DVD to obtain a copy of Johnson's post-arrest statement to the police." [doc. #1, p. 27]. He contends that counsel appeared unprepared and unknowledgeable for trial. *Id.* He also alleges that he wanted to fire Mr. Thomas for failing to effectively file a motion for a continuance, but that the court refused to let him do so. *Id.*

By pleading guilty, Johnson waived ineffective assistance of counsel claims unrelated to the voluntariness of his guilty plea. *Smith*, 711 F.2d at 682. None of Johnson's claims here relate to the voluntariness of his guilty plea. Moreover, as described above, the trial court already twice concluded that Johnson's trial counsel was prepared for trial and that he did not provide ineffective assistance. Based on the evidence and testimony elicited at the hearing on the motion to withdraw guilty plea, the undersigned cannot conclude that the state court's ruling was contrary to, or an unreasonable application of, clearly established federal law. Furthermore, it was elicited at the hearing on the motion to withdraw Johnson's attorney that "the crux" of Johnson's recorded statement was already reflected in the reports that Mr. Thomas had been given. Also, the state presented Mr. Thomas with a DVD copy of Johnson's recorded statement the day before trial. Accordingly, even assuming it was error for counsel to not obtain a DVD-recorded copy of Johnson's post-arrest statements, there was no resulting prejudice. Claim four should be **DENIED.**

> ### 5. Failure to Investigate, Attend Pretrial Motions, or Advise Petitioner of His Available Options Resulting in Denial of Due Process

Petitioner argues that counsel failed to investigate, listen to his version of the facts, attend

pretrial motion hearings, interview any witnesses, conduct any legal research, obtain the main part of discovery material from the government, and prepare for trial. [doc. #1, p. 29]. He contends that counsel "intentionally waived defendant's pretrial arraignment which would have exposed the weakness of the charge brought against defendant." *Id.* at 30.

Again, by pleading guilty, Johnson waived ineffective assistance of counsel claims unrelated to the voluntariness of his guilty plea. *Smith*, 711 F.2d at 682. None of Johnson's claims here relate to the voluntariness of his guilty plea.

Furthermore, Johnson does not say what exactly his trial counsel failed to investigate. *See U.S. v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."). Johnson cites to *Woodward v. Collins*, 898 F.2d 1027 (5th Cir. 1990), which is distinguishable from this case. In *Woodward*, counsel completely failed to investigate a count in a multi-count indictment to which the defendant pleaded guilty. *Woodward v. Collins*, 898 F.2d 1027, 1028 (5th Cir. 1990). The Fifth Circuit remanded for the trial court to determine if any prejudice resulted from trial counsel's error. *Id.* at 1029. Here, as described above, the trial court already twice concluded that Johnson's trial counsel was prepared for trial. Mr. Thomas spoke with his client and the district attorney on numerous occasions, he conducted voir dire with certain defenses in mind, he filed successful pre-trial motions, and he admitted he could have cross-examined the State's witnesses effectively. Clearly, Mr. Thomas did not completely fail to investigate Johnson's case. Based on the evidence and testimony elicited at the hearing on the motion to withdraw guilty plea, the undersigned cannot conclude that the state court's ruling was contrary to, or an unreasonable

application of, clearly established federal law. Claim five should be **DENIED.**

> *6. Conflict of Interest for Testifying Against Johnson at the Hearing to Withdraw Guilty Plea*

Johnson contends that trial counsel was burdened with a conflict of interest after Johnson filed a motion to withdraw his guilty plea, and his trial counsel testified against him at the hearing. [doc. #1, p. 32]. He states that he accused his trial counsel of "concealing exculpatory evidence" and of manipulating Johnson into signing the plea agreement to avoid trial for which counsel was unprepared. *Id.* He further alleges that counsel "took advantage of defendant's unwittingness and unintelligence of courtroom procedures and his (defendant's) distressed mind state". *Id.* at 35.

To prove a Sixth Amendment violation for conflict of interest, a petitioner must show "that an actual conflict of interest adversely affected counsel's performance." *Russeau v. Stephens*, 559 F. App'x 342, 356 (5th Cir. 2014) (citing *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000)). Applying this standard, the court must answer two questions: (1) whether there was an *actual* conflict of interest, as opposed to merely potential or hypothetical conflict, and (2) whether the actual conflict adversely affected counsel's representation." *U.S. v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005). An "actual conflict" means counsel was "compelled to compromise his or her duty of loyalty or zealous advocacy." *Russeau*, 559 F.App'x at 356 (citing *Perillo*, 205 F.3d at 781). An "adverse effect" may be established by "evidence that some plausible alternative defense strategy or tactic could have been pursued, but was not because of the actual conflict." *Id.* (citing *Perillo*, 205 F.3d at 781). Furthermore, "[a] conflict exists when defense counsel places himself in a position conducive to divided loyalties." *U.S. v. Medina*, 161 F.3d 867, 870 n.

1 (1998).

Under *Cuyler v. Sullivan*, prejudice under *Strickland* is presumed when counsel is burdened by an actual conflict of interest. *Cuyler v. Sullivan*, 446 U.S. 335, 345-46 (1980). However, the Fifth Circuit has held that the *Cuyler* prejudice presumption only applies to claims of ineffective assistance of counsel resulting from conflicts of interest caused by multiple representation. *See U.S. v. Newell*, 315 F.3d 510, 516 (5th Cir. 2002). The standard enunciated in *Strickland* applies when a prisoner alleges a conflict of interest of a different kind. *Id.* Here, because the alleged conflict is premised on a conflict between Mr. Thomas's interests and that of Johnson, rather than between the interests of multiple clients, *Strickland* provides the proper standard of review, and prejudice is not presumed. *See id.*

As described above, the trial court rejected Johnson's claims that his plea was involuntary and that Mr. Thomas was unprepared for trial. Johnson fails to articulate any "exculpatory evidence" that trial counsel allegedly concealed. Furthermore, nothing in the record suggests that trial counsel hindered Johnson's ability to file a motion to withdraw his guilty plea. Once Mr. Thomas withdrew from the case, Johnson's new lawyer promptly filed a motion to withdraw the guilty plea. Accordingly, Johnson was not represented by Mr. Thomas at the time the hearing on the motion to withdraw guilty plea occurred. *See Akpan v. U.S.*, No. 12-cv-550, 2013 WL 4398950, *13 (N.D. Tex. Aug. 14. 2013) (denying ineffective assistance claim where trial counsel no longer represented the defendant when he testified at the hearing to withdraw a guilty plea). Thus, the undersigned is unable to detect any conflict of interest that adversely affected trial counsel's performance. Claim six should be **DENIED**.

*7. Coercing and Pressuring Petitioner into Pleading Guilty*

Johnson asserts that he "did not and could not have understood the consequences of his guilty plea," and that his plea was involuntary. [doc. #1, p. 36]. He states that trial counsel knew Johnson's mother had passed away the day before entering the plea and that Johnson's emotional condition was not healthy enough to make an intelligent guilty plea. *Id.* Johnson further asserts that Mr. Thomas intimidated him, saying "if you don't plead guilty" the State is going to find him guilty "because the jury was handpicked" and because the State will "multi-bill defendant with 60 years." *Id.* at 37.

As stated in the previous claims, the Court has already found no basis for Johnson's allegation that he was induced into pleading guilty. The state court found, and the record reflects, that Johnson was not coerced into pleading guilty, that he understood the charges and possible sentences that could be imposed, and that he understood the consequences of his guilty plea. Johnson repeatedly responded "Yes, sir" when asked by the trial court if he understood the possible sentences that could be imposed on him, the rights he was waiving, and the fact that the State was not agreeing to any sentence or whether a multi-offender bill would be filed. Furthermore, Johnson mentioned nothing about his mother's death when he was entering the guilty plea. Johnson only mentioned his mother's death when asked about it by the assistant district attorney on cross-examination at the hearing on the motion to withdraw guilty plea hearing. [doc. #14-4, p. 234]. Petitioner has failed to prove that trial counsel was ineffective or that he would not have pleaded guilty but for trial counsel's actions. Based on the evidence and testimony elicited at the hearing on the motion to withdraw guilty plea, the undersigned cannot conclude that the state court's ruling was contrary to, or an unreasonable application of, clearly established federal law. Claim seven should be **DENIED.**

*8. Demoralizing Petitioner in Order to Induce Him into Pleading Guilty*

Johnson argues that trial counsel provided ineffective assistance when he "demoralized Applicant during jury selections and pretrial proceedings in order to induce Applicant's guilty plea to cover up for counsel's unpreparedness for trial." [doc. #1, p. 39]. Johnson states that counsel made malicious comments that "tremendously disheartened defendant," such as "Angola is full of innocent people" and expressing that "he (counsel Thomas) doesn't know what else to do because of being unprepared for trial." *Id.* at 40. Johnson also contends that trial counsel "chose to avoid disclosing the State's case against defendant" by filing continuances. *Id.* at 39. He also complains that counsel was "reluctant to return defendant's retainer fee," and that he failed to object to the State's drawing up a new bill of information before trial started. *Id.* at 41.

As stated in the previous claims, this court has already found no basis for Johnson's allegation that he was induced into pleading guilty. The state court found, and the record reflects, that Johnson was not coerced into pleading guilty, that he understood the charges and possible sentences that could be imposed, and that he understood the consequences of his guilty plea. Nothing in the record suggests that, but for counsel's allegedly "malicious comments," Johnson would not have pleaded guilty in this case.

Moreover, it appears that trial counsel only requested two continuances, the second of which was denied by the trial court. Mr. Thomas enrolled as counsel on March 17, 2010, and trial was set for August 9, 2010. On June 1, 2010, Mr. Thomas indicated that he needed some time off of work, and the trial was continued until October 18, 2010. On October 18th, Mr. Thomas moved for another continuance, presumably because he wanted more time to prepare and because he received some discovery on the eve of trial that he wanted to further investigate. A federal

habeas court "extend[s] highly deferential treatment" to counsel's case strategies and tactical decisions. *See Pape v. Thaler*, 645 F.3d 281, 292 (5th Cir. 2011). Additionally, Johnson cannot show any resulting prejudice because the state court denied trial counsel's second request for a continuance, resulting in just over a two-month delay between the original August trial date and the October trial date. Johnson has not alleged how the first continuance prejudiced him.[4]

Insofar as Petitioner complains about his legal fee being returned, Mr. Thomas stated that he returned the entirety of Johnson's legal fee. [doc. #14-4, p. 167]. Therefore, even assuming that Johnson can meet the first prong of *Strickland*, he cannot meet the prejudice prong.

Lastly, insofar as Johnson alleges that Mr. Thomas failed to object to the State's drawing up of a new bill of information, this claim is false. The record shows that trial counsel *did* make arguments against allowing the state to amend the bill of information. [doc. #14-4, pp. 30-35]. And when the trial court allowed amendment, Mr. Thomas expressly objected to the amendment. *Id.* at 35.

Claim eight should be **DENIED.**

### 9. Conflict of Interest Based on Petitioner's Motion to Withdraw Guilty Plea

Johnson contends that he told his lawyer to file a motion to withdraw his guilty plea, but that his lawyer lied and advised him that it was too late. [doc. #1, p. 43]. He claims that counsel knew that if Johnson filed a motion to withdraw his guilty plea, counsel would have to defend

---

[4] For example, Johnson has not alleged that he was denied his right to a speedy trial. In any event, such a claim would be meritless. *See Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1993) (recognizing that a one-year delay between arrest or indictment and trial is presumptively prejudicial); *Conner v. Banks*, No. 11-cv-91, 2014 WL 4162823, *13 (N.D. Miss. Aug. 20, 2014) (ineffectiveness claim failed where counsel requested two continuances, setting trial for" two days shy of one year after his arrest."). Approximately ten months passed between when Petitioner was charged and when his case was set for trial.

himself against a claim for ineffective assistance of counsel because of his "erroneous legal advice and sentence inducements". *Id.*

As described above in claim six, nothing in the record suggests that trial counsel hindered Johnson's ability to file a motion to withdraw his guilty plea, nor can the court identify an actual conflict of interest in this case. Once Mr. Thomas withdrew from the case, Johnson's new lawyer promptly filed a motion to withdraw the guilty plea. Thus, Johnson was not represented by Mr. Thomas at the time of the hearing on the motion to withdraw guilty plea occurred. *See Akpan*, 2013 WL 4398950 at *13 (denying ineffective assistance claim where trial counsel no longer represented the defendant when he testified at the hearing to withdraw a guilty plea). Claim nine should be **DENIED**.

### 10. Inducing a Guilty Plea for Specific Sentence of Five Years

Petitioner argues that his counsel induced Johnson's guilty plea by promising him a sentence of five years. [doc. #1, p. 44]. To reiterate, the Court has already found no basis for Johnson's allegation that he was induced into pleading guilty. As the trial court found, the record does not reflect that Johnson was promised a five-year sentence. The state court found Johnson's statement that he was promised five years without the multi-bill to be "an outright lie." [doc. #14-4, p. 267]. The court noted that "Mr. Thomas never testified to that," and it "doubt[ed] seriously that the DA involved in this case would ever offer five years in this matter, based upon Mr. Johnson's criminal history. The five years that Mr. Terrence Johnson indicates that was offered to him would be a gift." *Id.* The trial court credited Mr. Thomas's statements, and found Johnson to be dishonest. A federal habeas court must defer to a state court's credibility determinations. *See Reed v. Stephens*, 739 F.3d 753, 783 (5th Cir. 2014).

Based on the evidence and testimony elicited at the hearing on the motion to withdraw guilty plea, the court finds that Johnson has failed to rebut the presumption of correctness afforded to the state court's credibility determination. Petitioner has failed to prove that trial counsel was ineffective or that he would not have pleaded guilty but for trial counsel's actions. Claim ten should be **DENIED**.

*11. State Knowingly Suppressed the Identity of the Alleged Confidential Informant*

Johnson avers that his Sixth Amendment right to confrontation was violated when the State "knowingly suppressed the identity of the confidential informant for . . . cross examination purposes of a Motion to Suppress Evidence and trial despite his direct participation in this drug transaction to which none of the law enforcement officers testifying witnessed." [doc. #1, p. 46]. When an accused enters a guilty plea, he waives his right to testify on his own behalf, the right to a jury trial and the right to confrontation. *Wainwright*, 584 F.2d at 692. As stated above, the transcript of the plea colloquy confirms that the Petitioner's guilty plea was knowing, voluntary, and intelligent, and that he understood that he was waiving his right to a jury trial and his right to confrontation. Review of Petitioner's confrontation claim is barred, and claim eleven should be **DENIED**.

*12. State Knowingly Suppressed the Identity of the Confidential Informant and Used Perjured Evidence in Seeking Arrest and Search Warrant*

Petitioner asserts that the state violated *Brady v. Maryland*, 373 U.S. 83 (1963), when the State knowingly used false testimony that a confidential informant purchased cocaine from Johnson for the basis of the search warrant and Johnson's subsequent arrest. [doc. #1, p. 47]. Johnson also argues that he was entitled to know the confidential informant's identity under

*Brady. Id.*

Assuming *arguendo* that the confidential informant's identity is *Brady* material, as described above in claim three, the Fifth Circuit has already foreclosed federal habeas relief on this ground. *Santa Cruz*, 297 F. App'x. at 301; *Matthew*, 201 F.3d at 362; *see Ruiz*, 536 U.S. at 629. Furthermore, insofar as Johnson challenges the validity of the search warrant in this case, such a challenge constitutes a nonjurisdictional defect that Johnson waived when he pleaded guilty. *See U.S. v. Cothran*, 302 F.3d 279, 286 (5th Cir. 2002) (an unconditional guilty plea waives objections to searches and seizures that violate the Fourth Amendment). Claim twelve should be **DENIED**.

> *13. State Failed to Prove the Constitutionality of the Predicate Used to Enhance Defendant's Sentence*

Johnson argues that the State failed to introduce any evidence "to prove beyond a reasonable doubt" that the predicate offense used to enhance his sentence as a habitual offender in this case was entered knowingly, voluntarily, and intelligently. [doc. #1, p. 48].

After Johnson pleaded guilty in this case, the State filed a multi-bill showing one prior felony conviction from 2003 for possession of a schedule II controlled dangerous substance. [doc. #14-5, p. 118]. At the habitual offender hearing, held on August 23, 2012, the State proved via fingerprint analysis by Lieutenant Owen McDonnell that Johnson was the person who pleaded guilty and was thus convicted of the predicate offense in 2003. *Id.* at 119-21.

A habeas petitioner can assert a challenge on a current sentence enhanced by an allegedly invalid prior conviction, despite the full expiration of Petitioner's prior sentence. *Lackawanna County District Attorney v. Coss*, 532 U.S. 394, 401-02 (2001); *Maleng v. Cook*, 490 U.S. 488.

493-94 (1989). However, a petitioner cannot bring a federal petition directed *solely* at an expired conviction. *Lackawanna*, 532 U.S. at 401. Construing Johnson's claim liberally, the court finds that he is asserting a challenge to his current sentence, as enhanced by the allegedly invalid 2003 conviction. *See. e.g.*, *Thomas v. Tanner*, No. 10-3013, 2011 WL 5042088, *2 (E.D. La. Aug. 30, 2011) (construing petition, "out of an abundance of caution," as a challenge to the use of prior convictions for purposes of enhancing a sentence currently being served by petitioner).

However, the Supreme Court has also held that attacks on expired convictions used to enhance current sentences generally do not state a cognizable claim in § 2254 proceedings. *Godfrey v. Dretke*, 396 F.3d 681, 685 (5th Cir. 2005); *see Lackawanna*, 532 U.S. at 402-03. If a prior conviction used to enhanced a state sentence "is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully)," then that defendant may not collaterally attack his prior conviction through a § 2254 petition directed at the enhanced state sentences. *Lackawanna*, 532 U.S. at 402 (citing *Daniels v. United States*, 532 U.S. 374, 382 (2001)). Johnson has not shown that his 2003 conviction is still open to direct or collateral attack in its own right. Similarly, the court has no reason to believe that a 14-year-old conviction is still open to direct or collateral attack.[5] Thus, claim thirteen is not cognizable under § 2254 and should be **DENIED**.

---

[5] The Supreme Court has recognized an exception where the prior conviction was obtained because of a failure to appoint counsel in violation of the Sixth Amendment. *Lackawanna*, 532 U.S. at 404. In those instances, the petitioner may attack the expired conviction used to enhance a current one irrespective of whether the expired conviction remains open to direct or collateral attack. *Id.* Johnson does not allege that his Sixth Amendment right to counsel was violated when his prior conviction was obtained.

*14. Ineffective Assistance of Counsel for Failing to Adequately Investigate Circumstances of Defendant's Arrest and Preserve Claims on Appeal*

Petitioner argues that his counsel never consulted with him regarding possible lines of defense, resulting in an involuntary, unknowing, and unintelligent guilty plea and the unconstitutional forfeiture of Johnson's appellate rights. [doc. #1, p. 49]. He argues that he is entitled to relief under *State v. Crosby*, 338 So.2d 584 (La. 1976), wherein defendants pleaded guilty, conditioned upon appellate review of a nonjurisdictional trial error. Johnson also argues that his appellate counsel was ineffective for waiving Johnson's right to "these claims with counsel" without notice and Johnson's consent. *Id.* at 50.

As described in many of Johnson's prior claims, the court has already found that Johnson knowingly, voluntarily, and intelligently pleaded guilty in this case. Any claim that Johnson's counsel was ineffective for failing to advise him of "possible lines of defense" was waived by his valid guilty plea. *See Smith*, 711 F.2d at 682. Moreover, when Johnson pleaded guilty, he assured the trial court that he understood he did not have the right to appeal his guilty plea. [doc. #14-3, p. 402]. Thus, unlike the defendants in *Crosby*, Petitioner did not expressly reserve his right to appeal any claims. The Fifth Circuit has held that, "if the record contains no manifestation of a reservation of appellate rights, the plea is presumptively *un*conditional and an appellate court may not reach the merits of the defendant's appeal." *U.S. v. Bell*, 966 F.2d 914, 915 (5th Cir. 1992). Insofar as Johnson argues that his counsel was required to advise Johnson to enter a "*Crosby* plea" (a plea that reserves certain appellate rights), that claim is without merit.

In *Campbell v. Tanner*, the district court rejected relator's claims that his trial counsel was ineffective for failing to raise a *Crosby* plea, and that his appellate counsel was ineffective

for failing to raise that issue on appeal. *Campbell v. Tanner*, No. 13-4843, 2015 WL 11109827,

*7 (E.D. La. July 27, 2015). The court reasoned that trial courts have "very great and virtually

unreviewable discretion to reject rather than accept a guilty plea conditioned upon reservation of

appellate review of pre-plea assignments of non-jurisdictional error." *Id.* "In other words, the

right of the defendant to condition his plea upon the reservation for appellate review of pre-plea

errors is subject to acceptance by the trial court." *Id.* Because trial counsel's request for a *Crosby*

reservation, if made, was not guaranteed to be granted, the defendant could not show his trial

counsel's actions were deficient. *Id.* This reasoning applies with equal force to Johnson's claims

regarding his trial counsel and appellate counsel. Claim fourteen should be **DENIED**.

> *15. Denial of Constitutional Right to Counsel Post-Conviction Without Due Process*

Johnson argues that the *Martinez/Trevino* exception to procedurally defaulted ineffective

assistance of counsel claims should be applied in Louisiana. [doc. #1, p. 50]. He further argues

that "[a]ppellate counsel was ineffective for not pursuing the trial court's erroneous ruling

denying petitioner Johnson the right to withdraw the guilty plea due to ineffective assistance" of

trial counsel. *Id.*

The doctrine of procedural default holds that "a federal court will not review the merits of

claims, including constitutional claims, that a state court declined to hear because the prisoner

failed to abide by a state procedural rule." *Martinez v. Ryan*, 132 S.Ct. 1309, 1316 (2012). In

*Martinez*, the Supreme Court held that a prisoner may establish cause for a default of an

ineffective assistance claim by showing that (1) the underlying ineffective assistance of trial

counsel claim is substantial; and (2) the prisoner received ineffective assistance of counsel in

state habeas proceedings. 132 S.Ct. at 1318. In *Trevino v. Thaler*, the Supreme Court expanded the *Martinez* rule, applying it in states "where . . . state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal". 133 S.Ct. 1911, 1921 (2013). The Court concluded that, due to Texas's inequitable procedural system, Texas prisoners could benefit from the *Martinez/Trevino* exception. *Id.* Under *Coleman v. Goodwin*, 833 F.3d 537 (5th Cir. 2016), Louisiana prisoners can also benefit from the *Martinez/Trevino* exception.

The Louisiana Supreme Court appeared to consider all of Johnson's ineffective assistance of counsel claims on the merits. Thus, the *Martinez/Trevino* exception does not apply to those claims. Furthermore, Johnson's claim that his appellate counsel was ineffective for not pursuing the trial court's ruling denying Johnson's motion to withdraw his guilty plea due to ineffective assistance of trial counsel is without merit.

A criminal defendant has a constitutional right to the effective assistance of counsel on direct appeal where, as in Louisiana, the appeal is a matter of right under state law. *See Evitts v. Lucey*, 469 U.S. 387, 393 (19885). Johnson's appellate counsel filed an appeal challenging the excessiveness of Johnson's sentence. "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). While it is possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, it is very difficult to demonstrate that counsel was incompetent. *Id.* "When appellate counsel's deficiencies do not prevent appellate review, or counsel does not entirely fail to

challenge the prosecution's case, to prevail on an ineffective assistance of counsel claim, the petitioner must show that counsel's errors were so serious that counsel was not functioning as the counsel guaranteed to the petitioner by the Sixth Amendment." *Rose v. Johnson*, 141 F.Supp. 2d 661, 702 (S.D. Tex. 2001).

Even if appellate counsel committed error in failing to raise the specific claim on appeal urged by Johnson, the undersigned finds that Johnson cannot show resulting prejudice because Johnson cannot demonstrate that the result of the appeal would have been different. Johnson made numerous arguments before the state courts that trial counsel was ineffective and that his plea was involuntary. On a motion to withdraw Johnson's guilty plea, these arguments were denied. On state post-conviction relief, these arguments were again denied. Based on the evidence adduced and testimony elicited at the hearing on the motion to withdraw guilty plea, appellate counsel may have concluded that raising such a claim again on appeal would have been meritless. Appellate counsel is obligated only to raise and brief those issues that are believed to have the best chance of success. *See Ellis v. Lynaugh*, 873 F.2d 830, 838 (5th Cir. 1989). Moreover, ineffective assistance of counsel claims are more properly raised in state habeas review than on direct appeal in Louisiana. *State v. Carter*, 84 So.3d 499, 511 (La. 2012). Therefore, Johnson has not shown that he was denied his Sixth Amendment right to effective appellate counsel. Claim fifteen should be **DENIED**.

### Conclusion

For the reasons stated above, **IT IS RECOMMENDED** that the Petition for writ of *habeas corpus* filed by Petitioner Terrance Lynn Johnson, [doc. # 1], be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In Chambers, Monroe, Louisiana, this 12th day of April, 2017.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE